## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CONSEJO REGULADOR DEL
TEQUILA A.C.,

      Plaintiff,

v.

ADDITIVE FREE ALLIANCE, INC.,
and S2F ONLINE, INC.,

      Defendants.

CASE NO.: 25-1129

JURY TRIAL DEMANDED

## **COMPLAINT**

Plaintiff, Consejo Regulador Del Tequila A.C. ("CRT") sues Defendants, Additive Free Alliance, Inc. ("AFA") and S2F Online, Inc. ("S2F"), and states:

## **Introduction**

Plaintiff Consejo Regulador Del Tequila A.C. is the non-profit entity responsible for ensuring that products commercialized as Tequila throughout the world are in compliance with Mexican laws and standards. CRT is the *only* body accredited and approved under Mexican law to inspect, analyze, and certify compliance with the Official Mexican Standard NOM-006-SCFI-2012 (the "Tequila NOM"). In addition to certifying compliance with the Tequila NOM, CRT is also

responsible for substantiating fact-based claims on labels of Tequila, such as whether a product is made from 100% Agave or whether the Tequila meets the criteria for being classified as Blanco, Resposado, or Añejo. Moreover, CRT is the owner of the TEQUILA trademark in the United States.

As part of its responsibility as the *sole* certifier of Tequila and the agency responsible for substantiating fact-based claims on Tequila labels, it is CRT's responsibility to protect the Tequila industry and consumers of alcoholic beverages by stopping those that promote false claims and those that purport to be a certifier of Tequila. Without CRT's permission, Defendants have represented themselves as certifiers of Tequila, and more specifically, by falsely certifying Tequilas as "additive free."

Defendants do not have authority to certify Tequila. Further, Defendants have misled the public by certifying/confirming that Tequilas are "additive free" when that claim is false and/or misleading, thereby causing confusion in the marketplace and harming the Tequila industry. Accordingly, CRT brings this suit to stop Defendants from purporting to certify Tequilas, to stop their infringement of CRT's TEQUILA trademark, and to stop them from false and misleading advertising claims about Tequilas being "additive free."

## I.   PARTIES

1.      Plaintiff Consejo Regulador del Tequila, A.C. ("CRT") is a non-profit civil association of Mexico with its headquarters located at Avenida Patria #723 Colonia Jardines de Guadalupe, C.P. 45030 in Zapopan, Jalisco, Mexico.

2.      Defendant Additive Free Alliance, Inc. ("AFA") is a Kentucky non-profit organization with its principal place of business located at 205 East Pike Street, Cynthiana, Kentucky 41031.

3.      Defendant S2F Online, Inc. ("S2F") is a Florida for-profit company with its principal place of business located at 30 Lafayette Lane, Palm Coast, Florida 32164.

## II.   JURISDICTION AND VENUE

4.      This is an action for trademark infringement, false description or representation, and trademark dilution arising under 15 U.S.C. §§ 1114, 1125(a), and 1125(c). Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 1331.

5.      Defendants are subject to personal jurisdiction in this district because Defendant S2F resides in this District and because Defendants have infringed, contributed to the infringement of, and/or actively induced others to infringe CRT's TEQUILA trademark and engage in violations of the Lanham Act in this district.

6.    Defendant S2F and its principal, Grover Sanschagrin, reside in this District and transact business in this District.

7.    In addition, Grover Sanschagrin is a founder and the president of Defendant AFA and conducts business on behalf of AFA both from this District and in this District.

8.    Further, both S2F and AFA have collaborated to violate CRT's trademark rights, for example, by collaborating to form, promote, and manage their Additive-Free certification programs for Tequila.

9.    As stated on AFA's website at https://additivefreealliance.com/about/, "[t]he [additive free] program was started in 2020 by [S2F, doing business as] Tequila Matchmaker, when they released a list of additive-free tequila brands and products within their mobile app and website. Today, the company is an independent venture with a board of directors under the name 'Additive Free Alliance, Inc.'"

10.    In addition, on information and belief, Defendants have solicited business in this District to be part of their Additive-Free program, and have worked with liquor retailers to promote their Additive-Free certification programs.

11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the claims arose in this district, S2F resides in this district for purposes of venue under 28 U.S.C. § 1391(c), and one of the principals of AFA resides and conducts business in this District.

-4-

### III.    <u>FACTUAL BACKGROUND</u>

**A. CRT's Certification of Tequila**

12.    Established on May 17, 1994, CRT is a civil organization that brings together the actors of the Agave Tequila Chain, including agave producers, Tequila producers, bottlers, distributors, marketers, and government agencies.

13.    CRT is approved by the General Directorate of Standards of the Ministry of Economy of Mexico and is accredited by the Mexican Accreditation Entity AC to perform its functions as an Inspection Unit, Testing Laboratory, and as a Certification Body and Certification and Verification Body for Greenhouse Gases.

14.    CRT is the only entity authorized under Mexican law to inspect, analyze, and certify compliance with the Official Mexican Standard NOM-006-SCFI-2012.

15.    Only CRT can certify whether a product is "Tequila" and whether it meets the established technical criteria.

16.    CRT policies and procedures are aimed at promoting balance within the Tequila agroindustry. With a comprehensive approach, all actors in the productive chain are treated with equity and equality, avoiding discrimination at all times.

17.    One of CRT's primary functions is to safeguard the Tequila Denomination of Origin around the world to guarantee Tequila's authenticity to the consumer.

18.     Since 1973, the U.S. Department of Treasury has recognized Tequila as a distinctive product of Mexico.

19.     CRT owns an incontestable federal registration for the certification mark TEQUILA (Registration No. 5225126), as shown in Exhibit A.

20.     CRT's certification mark TEQUILA is famous.

21.     CRT works diligently to prevent the misuse of its famous and valuable certification mark, including, numerous proceedings before the Trademark Trial and Appeal Board to prevent unauthorized use or registration of the mark TEQUILA and confusingly similar marks.

22.     CRT works with each entity involved in the production of Tequila, including the Agave farmers, distillers, bottlers, importers, exporters, and brand owners to ensure compliance with the Tequila standards.

23.     In addition, CRT has its own laboratories where it tests each batch of Tequila that it certifies.

24.     The Mexican General Directorate of Standards ("DGN") acting through the Secretary of Economy of the Mexican Government (the "SE") establishes procedures for the certification of products to meet both technical regulations ("NOMs") and voluntary standards ("NMXs"). Tequila is subject to both NOMs and NMXs.

25.    CRT acts as a conformity assessment body, duly accredited by the Mexican Government to operate as an Inspection Unit, Testing Laboratory and Certification Body under the terms provided by the Mexican Quality Infrastructure Law ("QIL").

26.    Only CRT can inspect, analyze, and certify compliance with the Tequila NOM, NOM-006-SCFI-2012.

27.    Only CRT can authorize the use of "Tequila" as a Denomination of Origin issued by the Mexican Institute of Industrial Property, certifying the product for export to the U.S.

28.    DGN, through the SE, develops the standards to which Tequila must adhere, and CRT enforces those standards as an accredited conformance assessment body, which ultimately permits the product to be exported to the U.S.

29.    CRT is dedicated to protecting the entirety of the Tequila industry and protecting Tequila as a Denomination of Origin. Accordingly, CRT's reputation as a competent, independent, impartial, and sophisticated testing and certification agency is paramount to its role and the protection of the Tequila industry.

**B. Defendants' Wrongful Conduct**

30.    S2F owns and operates a number of websites, mobile apps, and social media pages dedicated to Tequila.

31.    For example, S2F does business as Tequila Matchmaker and Taste Tequila, and owns and operates websites at https://www.tequilamatchmaker.com/ and https://tastetequila.com/, as well as Tequila Matchmaker mobile apps available through the Google Play and Apple App stores.

32.    S2F also runs social media channels on at least Instagram, Facebook, and X (formerly known as Twitter) at https://www.instagram.com/tequilamatch/, https://www.facebook.com/tastetequila, and https://x.com/TequilaMatch.

33.    S2F created, operated, and promoted a program that it originally called its "Additive-Free Tequila Verification Program," as detailed in Exhibit B. In 2021, S2F changed the name of the program from "verification" to "confirmation," but the details of the program remained unchanged.

34.    The goal of S2F's "Additive-Free Tequila Verification Program" was to charge fees to Tequila companies and retailers in order to obtain S2F's "Additive-Free" badges, labels, and/or signs.

35.    S2F's "Verification Program" allegedly involved representatives from S2F touring and "inspecting" distilleries, testing Tequila samples, inspecting log books and receipts that show purchase of supplies, and "Authorization to view CRT records," and "Access to official CRT lab chemical analysis reports." Exhibit B.

36.    S2F claimed that "[i]t is possible that some brands from a distillery will earn the 'verified additive-free' certification while others will not." Exhibit B.

37.    S2F's "Additive-Free Tequila Verification Program" was an unauthorized certification program for Tequila.

38.    S2F is not authorized to certify Tequila and does not have a license from CRT to use CRT's TEQUILA trademark for certification activities.

39.    Grover Sanschagrin is a principle of S2F and Scarlet Sanschagrin regularly promotes and speaks on behalf of S2F.

40.    Grover and Scarlet Sanschagrin ("the Sanschagrins") regularly post on social media, provide interviews, and discuss Tequila with various press outlets on behalf of one or both of the Defendants. As part of those outreach efforts, the Sanschagrins made false statements of fact about CRT and Tequila. For example, in an article with the subheading "Is Your Tequila Full of Shit?", Mr. Sanschagrin states that CRT's "process [of analyzing Tequila for 'additives'] is somewhat lacking because the whole thing is based on an honor system." According to Mr. Sanschagrin, "[t]here is a binder in every distillery where you write down if you put additives in the product or not. The CRT looks at the binder and signs off and moves on. They don't test or smell or anything." Exhibit C.

41.    As another example, speaking on behalf of one or more of the Defendants, Mr. Sanschagrin posted on Twitter that the Defendants were "removing all tequila brands from the Additive Free Alliance list to protect them from retribution and legal action from their own regulator [CRT] for participating in this

program. We believe that additive-free tequila brands should be able to market themselves as such, but their regulator [CRT] wants to silence them." Mr. Sanschagrin          then          asked          for          donations. https://www.instagram.com/p/DAwRRp9v3Vz/

42.    Mr. Sanschagrin's statements are both false and misleading and designed to harm the reputation of CRT. Further, Mr. Sanschagrin's statements were untrue, communicated to the general public, disparage CRT by name, were made with malice, and have resulted in actual harm to CRT.

43.    Grover Sanschagrin was one of the founders of the Additive Free Alliance and is listed as its president.

44.    As stated on the Additive Free Alliance, "The Additive Free Tequila Program was launched in 2020 by Tequila Matchmaker. Since then, it has grown into a movement that includes brands, retailers, and consumers, who seek to identify and promote additive-free tequilas."

45.    Additive Free Alliance promotes and runs what it calls "The Additive-Free Program," and states that "[t]here are 4 steps required for a brand to be listed on the Additive Free Alliance." Those steps are to "Read the process outline," "Read the Overview Disclaimer, and fill out the official request form on this website," "Pay the starting costs invoice," and "Await lab test results."

46.    On its website, the Additive Free Alliance stated that it had "120 Member Brands," "482 Products," 127+ Retail Partners," and "48 Distillery Partners."

47.    Additive Free Alliance's program allegedly includes "lab testing of all products."

48.    Similar to S2F's "Additive-Free Tequila Verification Program," Additive Free Alliance's program is an unauthorized certification program for Tequila.

49.    Additive Free Alliance is not authorized to certify Tequila and does not have a license from CRT to use CRT's TEQUILA trademark for certification activities.

50.    Defendants not only run unlicensed Tequila certification programs, but also promote Tequila brands and alcohol beverage retailers to utilize the misleading phrase "Additive Free" for Tequila.

**C. The phrase "Additive Free" is false and misleading.**

51.    Only CRT may certify the characteristics of Tequila for export. CRT does not authorize or permit use of the phrase "Additive Free" or similar phrases such as "Free of Additives" for any Tequilas.

52.    All relevant Mexican government authorities believe the term "Additive Free" is a misleading health-related statement.

53.    On March 4, 2024, CRT issued an industry circular on its letterhead that expressed its concern, cautioning that any such label or advertisement touting "Additive Free" should be supported by "scientific, objective, and reliable" evidence that substantiates the qualities or properties of the product. CRT advised that, absent this evidence, producers should "avoid" the use of "Additive Free" and similar terms on their labels. Exhibit D.

54.    In August 2024, the DGN and the Mexican Federal Consumer Protection Agency ("PROFECO") provided CRT their views on this issue. Exhibit E

55.    DGN opined, in relevant part, that "the certification of the term 'Additive Free' would cause confusion among consumers and regulated parties and in the conformity assessment activities" and "the use of the phrase 'Additive Free' as part of the commercial information displayed on the labeling of 'Tequila', must be previously verified and not mislead regarding the characteristics and nature of such alcoholic beverage." Exhibit E.

56.    From the consumer protection standpoint, PROFECO directed that, "THE PHRASE 'Additive-Free' MISLEADS AND CONFUSES CONSUMERS DUE TO ITS INACCURACY, VIOLATING THE TEQUILA NOM." Exhibit E.

57.    On August 12, 2024, CRT issued an industry circular whereby it discussed these opinions, using the above quoted language, to inform the industry

that CRT "will not issue any certification or document regarding the claim 'Additive-Free' or any similar label implying the absence of additives[.]" CRT concluded: "we urge all Tequila Producers, Bottlers, and Marketers to avoid . . . the use of the term 'Additive-Free' or similar terms unless in full compliance with the requirements of these authorities, and not to mislead consumers into believing that additives permitted by the standards are harmful to health." Exhibit F.

58.    "Additive Free" and similar phrases are false and/or misleading as it pertains to Tequila for several reasons.

59.    As Defendants admit on their websites, certain "softeners" called abocantes that they label as "additives" are permitted in Tequila as per the Norma Oficial Mexicana applicable to tequila, the NOM-006-SCFI-2012, Alcoholic beverages-Tequila-Specifications ("Tequila NOM").

60.    These abocantes are sometimes naturally occurring byproducts of the same distillation and aging process, which may also be added in certain amounts as per the Tequila NOM. The Tequila NOM permits up to 1% weight by volume of 100% agave Tequila to consist of abocantes without any change to the bottle's label (i.e., without listing the inclusion of any abocantes), as long as the producer keeps corresponding records of the raw material used.

61.    The Tequila NOM's requirements are much stricter than those currently imposed by U.S. law, which permits the use of (i) "essential component" additives

and (ii) non-"essential component" additives up to 2.5% in "Tequila." See 27 C.F.R. § 5.148 ("Agave spirits may contain added flavoring or coloring materials as authorized by § 5.155.").

62.    There are four types of abocantes that are permitted under the Tequila NOM: glycerin, caramel coloring, oak extract, and jarabe or sugar-based syrup. However, just as a Tequila producer might add one or more of these abocantes, they can also be naturally-occurring as part of Tequila-making process, such as the aging process in barrels.

63.    Because abocantes can be added per the Tequila NOM or naturally-occurring, there is no scientific way to certify that a Tequila is "additive free."

64.    In addition, the phrase "additive free" creates a misleading impression that other Tequilas, those that are not "certified" by Defendants, contain "additives."

65.    In addition, the phrase "additive free" creates a misleading impressing as to the product's effects on a consumer's health because it suggests that the absence of additives will mitigate the health consequences typically associated with alcohol beverage consumption.

66.    As determined by the CRT and explained below, the term "Additive Free" is a misleading health-related statement.

67.    Independent research organizations have found that "additive-free claims are regarded as positive and healthy." Song & Im, Moderating Effects of

-14-

Food Type and Consumers' Attitude on the Evaluation of Food Items Labeled "Additive-Free" e2, J. Consumer Behavior (revised Apr. 25, 2017).

68.    "Food additives are typically perceived as unnatural, unhealthy, frequently met with [skepticism] and distrust." Osman & Jenkins, Consumer Responses to Food Labelling: A Rapid Evidence Review 36, Food Standards Agency (published Sept. 2021).

69.    These perceptions are creating a notable and negative impact on Tequila. See Market Watch, Additive-Free Tequilas Gain Popularity with Health-Conscious Millennials (published Oct. 23, 2023) (one industry expert noted that "Many people drinking additive-free Tequila consider themselves purists. Why drink a Tequila with additives and added sugars that will give you a hangover when you can have a clean Tequila?").

70.    The term "Additive Free" or "Free of Additives" is a false or misleading statement as it pertains to Tequila, for example, because it is a health-related statement, which deceives consumers into thinking they are consuming a "healthier," "pure," or unadulterated product.

71.    This harms the Tequila industry as consumers are led to believe (i) there is something harmful or unhealthy about Tequila that does not advertise itself in this fashion, and (ii) "Additive Free" Tequila is an approved, certified category of Tequila, which it is not.

72.     Because "Additive Free" or "Free of Additives" violates CRT's standards and rules, Defendants should be enjoined from using and promoting this phrase, including by enjoining their "additive free" certification programs for Tequila.

73.     Defendants claimed to have suspended their Additive Free certification program for Tequila. But Defendants are currently offering an Additive Free certification program for alcohol products, namely at least Mezcal and vodka.

74.     Defendants claims that they do not intend on resuming their Additive Free program for Tequila. However, the service and the process that Defendants are currently offering to certify Mezcal and vodka as "Additive Free" are nearly identical to the service and process that Defendants were previously using to certify Tequila as "Additive Free."

75.     There is nothing currently preventing the Defendants from resuming their Additive Free certification program for Tequila.

## IV.    CLAIMS FOR RELIEF

### COUNT I: Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114

76.     CRT realleges and incorporates by reference the allegations set forth in all proceeding paragraphs.

77.     CRT is the owner of a valid, enforceable, incontestable U.S. registration for the certification mark TEQUILA.

78.    Defendants' wrongful and unauthorized use in commerce of TEQUILA to promote, market, and advertise their Additive Free Tequila verification/confirmation/certification programs constitutes trademark infringement under 15 U.S.C. § 1114, as it is likely to cause confusion, mistake or deception.

79.    CRT is entitled to recover Defendants' profits, CRT's actual damages, and the costs of this action. CRT is further entitled to recover treble damages and attorneys' fees under 15 U.S.C. § 1117, as this is an exceptional case due to Defendants' willful conduct.

80.    Defendants' intentional and willful infringement of the TEQUILA Mark has caused, and will continue to cause, damage to CRT, and is causing irreparable harm to CRT for which there is no adequate remedy at law. Therefore, CRT is entitled to injunctive relief against Defendants.

**COUNT II: False Description Under the Lanham Act, 15 U.S.C. § 1125(a)**

81.    CRT realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

82.    CRT is the owner of a valid, enforceable, incontestable U.S. registration for the certification mark TEQUILA.

83.    Defendants have used, and continue to use, in commerce one or more words, terms, names, symbols, devices, designs and combinations thereof that are false or misleading description of fact, or false or misleading representation of fact,

which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

84.     The actions of Defendants described above have, at all times relevant to this action, been willful and intentional.

85.     As a result of Defendants' actions, CRT has been damaged and will continue to be damaged. CRT is entitled to recover Defendants' profits, CRT's actual damages, and the costs of this action. CRT is further entitled to recover treble damages and attorneys' fees under 15 U.S.C. § 1117, as this is an exceptional case due to Defendants' willful conduct.

86.     Defendants' conduct has caused, and will continue to cause, damage to CRT and to the Tequila industry, and is causing irreparable harm to CRT and the Tequila industry for which there is no adequate remedy at law. Therefore, CRT is entitled to injunctive relief against Defendants.

**COUNT III: Dilution under the Lanham Act, 15 U.S.C. § 1125(c)**

87.     CRT realleges and incorporated by reference the allegations set forth in all proceeding paragraphs.

88.    Based at least on the distinctiveness of the TEQUILA Mark, the duration and extent of advertising featuring the TEQUILA Mark by third parties, the geographic area in which third parties advertise TEQUILA, the nature of the trade channels used to market Tequila under the TEQUILA Mark, the degree of public recognition of the TEQUILA Mark, and CRT's incontestable federal registration for TEQUILA, the TEQUILA Mark has become famous, as that term is used in Section 43(c) of the Lanham Act, and has been famous for years.

89.    Defendants' actions described above, all occurring after the TEQUILA Mark became famous, are likely to cause dilution of the famous TEQUILA Mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C.A. § 1125(c).

90.    CRT and the Tequila industry has sustained damage as a direct and proximate result of Defendants' dilution in an amount to be proven at trial.

91.    Defendants' dilution of the TEQUILA Mark has caused, and will continue to cause, damage to CRT and the Tequila industry, and is causing irreparable harm to CRT and the Tequila industry for which there is no adequate remedy at law. Therefore, CRT is entitled to injunctive relief against Defendants.

## **DEMAND FOR JURY TRIAL**

CRT demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, CRT respectfully prays that the Court enter judgment in its

favor on each and every claim for relief set forth above and award it relief against

Defendants, including, but not limited to:

(1)     In accordance with 15 U.S.C. § 1116, issue a permanent injunction enjoining Defendants and Defendants' officers, agents, servants, employees, affiliates, contractors, and attorneys, and all persons in active concert or participation with Defendants from the acts described in this Complaint, including enjoining Defendants from offering any programs confirming or certifying Tequila as "additive free";

(2)     In accordance with 15 U.S.C. §§ 1117(a) and (d), award CRT all of Defendants' profits from the aforesaid violations of the Lanham Act;

(3)     In accordance with 15 U.S.C. § 1117(a), find this case to be exceptional in CRT's favor and award CRT its reasonable attorney's fees, costs, and expenses of this action;

(4)     Award CRT its costs and pre-judgment and post-judgment interest at the maximum allowable interest rate;

(5)     Actual, treble, and exemplary damages; and

(6)     Grant CRT such other relief, at law or in equity, to which it is justly entitled.

Dated: September 22, 2025

Respectfully submitted:

**HOLLAND & KNIGHT LLP**

By: */s/ Daniel J. Barsky*
 Daniel J. Barsky, Esq.

**Daniel J. Barsky, Esq.**
Florida Bar No. 0025713
daniel.barsky@hklaw.com
701 Brickell Ave.
#3300
Miami, Florida 33131
Tel: (305) 458-1193
Fax: (305) 789-7799

**Justin S. Cohen** (lead counsel, *pro hac vice* forthcoming)
Texas Bar No. 24078356
Justin.Cohen@hklaw.com
1722 Routh Street
#1500
Dallas, Texas 75021
Tel: (214) 969-1700
Fax: (214) 969-1751

*Attorneys for Plaintiff*
*Consejo Regulador Del Tequila A.C.*